be seated. And when you are seated, I would like to introduce Mr. Thomas Potter, which is part of the U. M. Act, appellate by Richard Palmer. Mr. Potter? Thank you, Your Honor. May it please the Court, Mr. Palmer? My name is Thomas Potter. I represent the petitioner-appellant Betty Meinema in this case. There are four reasons that we think the Court should reverse the order. Number one, we don't think that the citation petition was subject to the formal fact-checking required under normal civil practice, and therefore was not susceptible to a 2-619 motion for a failure to state a cause of action. Number two, we think that the no limitations language in paragraph three of the short form power of attorney is nothing but a catch-all, which catch-alls do not enlarge the powers granted to the agent. Number three, even if the language does empower the activity of establishing new POD accounts, which Barbara Belamonder took, you still then have to go to the next step, hear the evidence, and say was the establishment of these POD accounts in contravention of the decedent's estate plan. There is a statute right on point that you cannot alter an estate plan by doing what you are doing as an agent. I will get to that, it's on page 39 of the appendix. And fourth, does the presumption of fraud obtain when an agent enriches third parties at the expense of the principal? And taking those four things in order, as far as the 2-619 motion, the trial court latched on to the Shugart case, which this court decided many years ago. I forgot how long ago. But the issue was whether a citation could be directed against a trust. Well, since a trust is not amenable to suit, this court said, that under 2-619 the citation would be dismissed and it used the words, failed to state a cause of action. Well, that's true, I guess, but that really wasn't the point of dismissing in Shugart. The point of dismissing was that the target was never going to be amenable to suit, he could have sued a ham sandwich. And that should have been dismissed also. But the proper party would have been the trustee. And as I say in my reply brief, what went on to happen was they got new attorneys and they ended up finally suing against the proper party who was an attorney who had failed to fund a trust, and away they went. It was just a question of getting it in the right procedure. And I think this court never meant to say that henceforth all citation petitions had to be formally fact-led and state a cause of action. The Nichols case, as I cite in my brief, doesn't say that at all. It says the point of a citation is to bring before the court what the complaint of the petitioner is and why certain property should either be discovered in a discovery citation or be returned to the estate in a recovery citation. You have to distinguish which citation you're trying to file. Once that's known and once the court knows what the issues are and what you're trying to recover, then we believe it's incumbent on the court to take the evidence and decide whether these items of property or money or whatever should in fact be returned to the estate. The cases, Nichols and I cite some other cases that say that. Yet the trial court latched on to Shugart. In the answer brief, the appellee cites Boyer as authority of the 2-6-19 as properly dispositive of a citation petition, but if you read the Boyer case, which I did last night, again, last night I picked up on the fact that the citation petition in Boyer was not a citation petition. Boyer wasn't dismissed at all. That's not even what happened in Boyer. If I could back you up a second. You were talking about the court should take evidence. I mean, the court knew what happened to the money, right? I mean, is there something that's in dispute evidentiary-wise? The court didn't get into whether there was an alteration of the estate plan. The court didn't get into the circumstances. The court specifically reserved the issues of waiver and estoppel in its order because it took no evidence. The court looked at the, if you look at the court's order, the court in I think it's paragraph Roman numeral 5 of its order hung its head on the language of the power of attorney and that's all. The court didn't get into whether the agent was acting for the benefit of the principal by doing what she did. The court just said, as a matter of law, putting no limitations in the blank in line 3 enables the agent to do everything, regardless of whether it's in the best interest. It didn't go on to say that, but by implication, regardless of whether it's in the best interest of the principal and regardless if it benefits third parties to the benefit of other parties who were in the estate plan of the decedent. The court just said, and I believe if we look at the court's order, it's in paragraph Roman numeral 5, at page 32 of the appendix, page 34 of the appendix, scope of authority, the court finds that the resolution of the motion to dismiss turns on the scope of the authority granted in the power of attorney. The court finds both Nichols and Romanowski instructive on this issue. The court finds the decedent's insertion of the phrase, quote, no limitations, close quote in paragraph 3 of the short form power of attorney issue in this case authorized the establishment of the purity certificates of deposit and on that basis the motion to dismiss should be granted. The court just stopped right there and didn't go on, as the court should do, to say whether it was proper under the statute to preserve estate plans or whether it was fair, whether it was in the best interest of the principal to have done that. So that's, we're saying that not only did the court misconstrue the language of the power of attorney, but stopped short of doing what the court should have done, even finding as it did as to the language. Let me just, you know, nobody really talks about this, but in section 3 the power of attorney gave the power to make gifts. Did it? Well it says it does. We don't think it did because what it says is no limitations. No, but up above that. It says if you, right up above it says if you want to have the power to make gifts or do this or do that, then you have to enumerate. You have to enumerate the power, which leads me right on. The language says no limitations, but does not identify a delegable power. If it had said all delegable powers listed above, no limitations, then gifts and change of beneficiaries may have been possible. No limitations means nothing without a delegable power identified. I would go further, Your Honor, and say when it says enumerate, that's what it means. Enumerate. And the point of requiring enumeration, you look up in the first part of the power of attorney, they're enumerated, I think it's A through O. Those are all enumerated. It says this and this and this and this. Okay, so when you're going over that with your client, you say all these things that are laid out right here, and the point of requiring enumeration is that you're going to sit down with your client and say you really want her to make gifts? Okay, well, write it in here. And do you want to limit it to 50,000 hours? Sure. Or do you want her to designate beneficiaries but not to eliminate designated beneficiaries? Right, you can mix and match as you want between paragraph two and paragraph three. Isn't this really just an error on the part of the person who drafted the power of attorney? I don't think that matters. I think the document, we have to take what's in the document. We don't know if he went over every one of these items in the parentheses in paragraph three or not. My guess would be he didn't, but what does that matter? It doesn't matter. I think we strictly construe the document, or are we trying to somehow figure out the draft or the principal's intent? I think it must be strictly construed when it comes to making gifts, and the cases, I mean, I suppose you can strictly construe it for some things and not others. I think, well, I'm not sure of that. I think when it comes to making gifts, however, if you look at the case I cited from Delaware that paragraph, excuse me, in item four. I'm sorry, item three on page 13 of the brief. Heightened scrutiny is demanded where the attorney in fact urges the court to accept a theory she exercised her authority appropriately and consistently. The principal's intent when the exercise of that authority depends on a liberal reading, depends upon a liberal reading of the language in a preprinted form, entirely inconsistent with the formal expressions of intent on the principal's current will. How is this a gift if it doesn't occur until he dies? Isn't it a change of beneficiary? I can't give anybody a gift after I'm dead. It is a, it's the giving of an expectancy. It's perhaps not a completed gift because she can walk in the next day and change it, but it's certainly the gift of an expectancy. And it doesn't matter. If there wasn't a designation, an enumerated delegable power to change beneficiaries or make gifts. I believe it's in the Nichols case where they say you don't, the general banking powers don't give you the authority to change beneficiaries on a bank account. Okay. If I can push on here. I do have a question. Okay. Is there such a thing as a gift of an expectancy? I've never heard of that. She, not a completed gift. But I can give you a gift. I can write, I can give you a life estate in my house. You don't have a completed gift because I'm not dead yet, but I'm giving you a life estate. How would you define that legally? Would that be a gift of an expectancy? It would be an expectancy. Yeah, I would think so. I've never heard of such a thing. How does a fiduciary degree wind into this or does it? The principal has a right to expect that the agent will carry out his wishes and how better to express your wishes than you will. At page 39 of my appendix it cites the statute that says you've got to maintain the principles of state plans right in there. And Nichols says that also. Nash, the Delaware case I cited and read from says that. And so even if the language authorized the transaction, the bare language authorized the transaction, the principal needs to act and the agent needs to act in the principal's best interest. That's a fact question. That's a determination the trial court should have made. Thank you. And the fiduciary duty is also touched on or controlling when we come to item 4.4 of mine which says that you cannot enrich other people at the expense of the principal. If the principal had wanted the distribution of his money, like ended up with after the POD accounts were established, he could have done that himself while he was competent to do that. And there is a presumption of fraud if you are a fiduciary and you use your power to enrich third parties. Now, in Illinois there is no case that says that exactly, but there is no case otherwise in any other jurisdiction that I could find that said the opposite. So I'm taking the cases that have explicitly said you can't enrich third parties and I've cited them as persuasive authority. I guess my opponent would have the court say no, that's okay, you can enrich third parties and no presumption of fraud obtains, but I think the contrary is true. So I think even if the court was correct in its interpretation of the language, that the court still had a lot of work to do before reaching a final result in this case. Questions? Thank you. Mr. Palmer. May it please the court, Mr. Potter. My name is Richard Palmer. I'm appearing this afternoon on behalf of Harold Russ and Donald Russ, two of the four siblings. I want to address the issues basically in the order that Mr. Potter addressed them, but I also want to spend some of my time allotted for addressing the doctrine of election issue based upon equitable estoppel, because I think that is an equally strong basis upon which this court should affirm the trial court's resolution. First, with respect to the procedural issue, with all due respect, I believe this court said exactly what it meant, particularly in the context of a citation to recover. There have been pointed out the difference, and they're kind of commingled in a rather antiquated statute of a petition of a citation to discover and a citation to recover. They're in the same section. But a citation to recover, as the courts have acknowledged, is really a separate animal. And what is happening there is, as is the case here, the party bringing that petition wants the party against whom the petition is directed to cough up the property, to put it back into the estate. And there ought to be a requirement that where you're going to ask the party to cough up property, that you state a valid basis upon which that relief could be granted. And there also ought to be the procedural aspects of let's do some discovery, let's test it by motion, whatever else might be applicable. So as you will see throughout many of these cases, even in the other cases on citations to recover property, they are resolved on a motion stage. So I think this court can quickly dispose of that aspect of this case. It was right to be disposed of on a 2619 motion. Let me turn to the merits. The basis upon which the trial court resolved this case was on the scope of authority. And the trial court looked at the four corners of the power of attorney. And with the benefit of hindsight, could we make it better so that we wouldn't even be here, we wouldn't even bend in the trial court? Well, of course, we could make it better. But given what we have, the document itself, and given the jurisprudence on powers of attorney generally, and given the statute, I suggest to the court that the trial judge reach precisely the correct result. The trial court had in mind, because he specifically said in his order, or alluded to, both the Romanofsky case and the Nichols case. And those are the two cases that really, I think, frame. Unfortunately, both of them ended up in not finding the scope of authority. But our case really is different. The Nichols case in particular, well, the Nichols case came down while this case was pending in the trial court. Nichols did not involve a statutory short-form power of attorney. But the court goes on in that decision and says that doesn't matter. The court quotes at length the language from the actual power of attorney involved there. And if you look at the language from the Nichols power of attorney and the language from our statutory short-form power of attorney, you will find nothing similar to the fill-in-the-blank type of arrangement we have in paragraph 3 of this power of attorney, which is the operative grant of authority here. Nichols also seemed to, when they finally got to the point of how are we going to decide this, also seemed to place, I would suggest, considerable reliance upon the fact that there was a presumption of fraud because a fiduciary had used a power of attorney to benefit the agent. That is just the opposite of what we have here. When Barbara exercised this power of attorney to establish the four POD accounts, at least if the 2004 will is to become the operative will, that was the will that was admitted to probate, she did that to her financial detriment because she was going to take 50% of the residue under the 2004 will. If all of that money came in, it split two ways as opposed to putting it in the four equal POD accounts where it split four ways. Why not just leave things the way they were and give her share to her brothers after everything is distributed pursuant to the will? And that way her gift or her request or her change of beneficiaries wasn't to the detriment of one sibling. Well, I'm going to take a little liberty. One within the record itself, if she were to have taken that, of course it would require Betty's cooperation and you weren't going to get Betty's cooperation anyway. So she couldn't make the complete fourths come out the right way without really shorting herself below just the fourth. So that would be a peer of record. Outside the record, we don't really know what Leroy may have been saying at the time. We know of record there's a 2000 will where the residue is left four ways. Then there's the 2002 power of attorney. Then we also know there's the 2004 will where the residue is left two ways. I think you've answered my question. Is this really kind of a slippery slope issue or can it be? I mean, is there no end to what she can do as long as she doesn't increase her own share? Well, if one were to... Under the original statement? I mean, can she have given everything to her brother? One of the brothers, rather, and nothing to herself? I believe that she, under the grant of authority in paragraph three, could make those gifts. Unless there's some... In the hypothetical, I can't think as I stand here of any other doctrines that would impose limitations on that, but I believe when Leroy, in paragraph three, says here you may grant, and to Justice Wright's question to Mr. Potter, which I think was a good question, says no limitation means nothing unless there's a delegable power. Well, if you look at paragraph three, and again, I wish it were better granted, but it does say grant. So there's a grant, and then you have to take the parentheses out. But then what else could no limitation say after that? He could have done as in Romanowski, the other case, just left it blank. And I believe Romanowski was correctly decided based upon leaving it blank. But here, or putting in the word none in terms of additional grants, but here they chose the words no limitations. But no is also a negative term. And no and none to a layman, no limitations might mean none to a layman. Well, I can only say if you look in the dictionary for the limitations, which I did, it's without any bounds to the authority. You'll find that in the dictionary out here. It would be nice if the word all was in there. And it would be nice if it would have said I specifically grant all of these powers. Yes, there's no question about that. But, again, looking at the four corners and doing the best we can to construe that with the words that Leroy chose, no limitations can exist in a vacuum. These are words that he actually put in there. This doesn't come off the form. This was a blank. He filled that in. Everyone who's assembled here can look at those two words and come up with reasonable explanations as to connotation. What is our standard of review of Judge Hartman's decision? What's the standard we apply? De novo. I will concede that. It was resolved in a 2-619 motion. I want to address this briefly, Mr. Potter's argument about altering the estate planning and that you can't do that even if the court were to reach the conclusion that the authority is granted, then it still doesn't save the day because of the statute. In all due respect, that statute doesn't say that. The statute simply says that you shouldn't alter the estate plan to the extent that the estate plan is known to the agent. There's no evidence that that may have been the case here. It also goes on to say, this section shall not apply to any payable on death account. This is 45 ILCS 2-9 on page 39 of his appendix to his brief. Moreover, it's not at all clear from this record that there was any altering of the estate plan. That should not be a factor in our judgment in this court's resolution of the case. I want to spend what time is left to me addressing the election issue because I believe that it's square on with this case. We have a situation where Betty, under the will that was ultimately admitted to probate, was named as a co-executor, yet she never tried to open an estate proceeding. She kept her POD account. She's got that money to this day. She's never paid it back into the estate. She sat there, declined to act, when her sister, the other nominated co-executor, Barbara, opened an estate. She declined to act. The will was admitted to probate, and it wasn't until 11 months later, after the six-month time within which the will could have been contested, and that's a jurisdictional limitation. There aren't any ways around that that I'm aware of. She waits until 11 months later, 33 months after her dad has passed away, and then files the challenge by way of these petitions for citations to recover assets. This is precisely what the doctrine of elections based upon equitable estoppel is designed to address. She should not be allowed to take the benefit of her POD account, and then at the same time say, oh, but I want my siblings to put their POD accounts back in. And their response in the reply brief, and this is my only opportunity to respond to some things that were brought up in the reply brief, is that Betty's intent on this issue would make a difference. Therefore, don't decide it on this basis, because we need to have more of an evidentiary hearing to hear more about what Betty was thinking at the time, why she did what she did, why she didn't pay it back into the state. Well, even under nobody's theory, is Betty entitled to anything less than $147,000? Well, I would say that there are certainly a couple of obvious scenarios in which she would get less than $147,000. The most obvious one is contesting the validity of the 2004 will. Leroy, we know two wills of record. Leroy had, I think... She never did that, right? Well, we did not challenge the will, because as it was rolling out, and without a challenge to the POD accounts, within which the Times challenged the will, it was financially made no sense whatsoever to contest the will. Because the economics of it, of what was going to be in the estate, didn't warrant contesting the 2004 will. But it would if there were an additional $600,000 in the estate. So that's one scenario. If there were a successful contest of the will, based upon lack of testamentary capacity, based upon undue influence, two of the classics, very real possibilities. The other, of course, would be the possibility of any creditors, anything else that might have affected the amounts once the funds are put into the estate. Are they just going to be there for distribution to the beneficiaries, or might there be other claimants against those funds? That's more hypothetical, I think. But those are two scenarios to answer your question as to how that could happen. It well could have happened in this case. The point being on the election doctrine is we've been deprived of that opportunity by her sitting on her hands and her keeping her money. She never put her money in jeopardy. She kept it. On the issue of the intent, I think that's really not a reason to send this back to the trial court. If you look at all of the cases we cited on this issue, resolved on a motion to dismiss. Handelsman, motion for summary judgment was granted. Kiker resolved on a motion to dismiss. Boyer resolved on a motion to dismiss. So these cases on the election doctrine are typically resolved, and Betty's intent really doesn't have anything to do with whether the doctrine is applicable here or not. I respectfully suggest to the court that it absolutely is. So that A, this case was ripe for decision. B, the scope of the authority and power of attorney was certainly broad enough to allow the establishment of these POD accounts, especially where Betty did not, or excuse me, especially where Barbara did not benefit herself. It was to her detriment. And C, Betty has to live with that result because she elected to keep her POD account. If she thought it was improperly established, she had ample time, wonderful opportunity to have paid it back into the estate and said, I want my siblings to do the same. She did not do that. Do we have to decide the estoppel issue here, or can it be demanded for the trial court to consider it? I believe you can decide the estoppel issue here. Can and must are two different things. What is your view? Must it be resolved here, or would the trial court? No, it need not be resolved here. This court could say nothing about the estoppel issue and affirm the trial court on the very basis that the trial court decided the case, and that is the scope of the authority. And I would urge the court to do that. If the court is so inclined, there's an alternative totally independent basis to affirm, and that's the election estoppel argument. And it can resolve that here. Mr. Potter has argued that, well, if you get that far in how you're going to resolve this case, don't resolve it here, send it back. But I would suggest that that need not be the case because her intent is not going to be pertinent to the resolution of that, and I did not address the procedural aspect at which they were resolved because that wasn't an issue when I wrote my brief. I wanted the opportunity to say that today. Questions? Thank you. Thank you, Mr. Palmer. Mr. Potter, some rebuttal? Thank you. Mr. Palmer said that he thought that the no limitations language in paragraph 3 was sufficient to confer unlimited powers. That then would make the no limitations language broad and all-encompassing and therefore pursuant to the Nicholas case or the Fort Dearborn case. I'm sorry, I can't remember which case used the word illusory. We don't look at that broad, all-encompassing language. That's illusory and uses the word illusory. I'm not going to find it. Well, that leads me to a question I want to ask you. What if it just said all delegable powers? That's illusory. It's not binding. Not binding on who? It's not binding. It is not effective, I'll say. I shouldn't say binding, I should say effective. And, again, either Fort Dearborn or Nichols used the word when you get a situation in language like that, it is illusory. So the intent of the drafter is irrelevant. Correct. If the drafter's intent is I give you everything, every power which I could exercise myself no matter what, and it's spoken or recorded that broadly, that language is illusory and it would not be enforced. Therefore, it would not carry out what might have been the principal's real intent. So the issues of election and estoppel and waiver were specifically reserved by the court with the recital that they are fact-intensive. You can't find somebody who's waived something without determining whether the person had full knowledge of all relevant facts at the time of the action which is claimed to have constituted a waiver. That's just black-letter law. You can't waive something if you're not in possession of all the facts or enough facts to make an informed decision. We don't have that. Mr. Palmer said there are obvious scenarios where Betty would not have gotten what she ended up getting from the POD. One would be a will contest. There was nothing suggesting that Betty wasn't going to try to get the money back to the estate. They could have filed a will contest, but they chose not to. Too bad, I guess. I guess their argument is that maybe there's a latches to something. In other words, they had no reason to do it because your client wasn't attacking the PODs. Well, a reason to do it would have been the letter that I put in the appendix, the letter I sent out saying let's appoint Tom Skorpa, the administrator, CTA, to try to get the money back. That was three months before the six-month limitation period ran. So there's no action, there's no detrimental reliance. First of all, there's no action or inaction that Betty took to lull them into a false sense of security that she was just going to let it go. She was never going to let it go. And then, again, before the six months ran, we filed a motion to appoint a special administrator, I believe, and I suggested Dan Russell for that. I'm sorry, the letter was in January of 2009, which was before the will was offered for probate. The motion is in the appendix, but I can't see it right now. The motion would be to appoint a special administrator, and I believe that that was also well within the six-month claim period. All right, we can certainly find that. And you don't have to use your rebuttal time to look for that. I think you've answered my question. Then, as far as the cause of action, oftentimes you want property restored to the estate, and I put in my reply brief, maybe there isn't really a formal cause of action. The court just, you know, you borrow my shovel, and I die, and you took it, you had it legitimately, and so what's the cause of action? It's not conversion. Maybe there's no formal cause of action, but yet the property still should be returned to the estate because of ownership in the decedent at the time of death. So I think I heard nothing from the other side, which sways me from my opening. It says on any of the four points that I raised in my main brief, I think that the trial court should be reversed and the matter should be sent back. Thank you. Any questions? And thank you both for your arguments here this afternoon. The matter will be taken under advisement. A written disposition will be issued. And right now the court will be in a brief recess before the next case.